Good morning, Your Honors, and welcome to the Court. My name is Mr. Trudeau, with the counsel St. Paul's Park upon Mendoza. We are interested in the involvement of Mr. Arias, and I'd like to reserve a few minutes for a couple of questions. So, the question before the Court today is whether or not the Anthony Raimondo, an attorney, can be regarded as a lawyer privately liable for retaliation under the Fair Labor Standards Act. As the Court notes, Mr. Raimondo attempted to engineer the deportation of a worker while the wage claim was due to his employer, who is Mr. Raimondo's client. Because Mr. Raimondo took the actions in the employer's interest, in the course of a wage dispute, he did not give reasons simply for understatement. The claim is that the solicitor pleads the rule for damages. Mr. Arias, may I ask a further question? Hold on, hold on. You call it solicit? That's a FLSA? Yes. Sorry, Your Honor. Okay. This note is overruled for now. Mr. Arias, as a lawyer for a private right of action against Mr. Raimondo, our briefs lay out his main reasons why Section 216B of the FLSA applies for a private right of action against third-party retaliators like Mr. Raimondo. First, he does the plain language in Section 213D in the varying breadth of his definition of an employer. And even if this court sees institutional ambiguity in what an employer means in Section 216B, the rest of the counsels that interpret it in that capacity should be done in order to advance the thesis for future purposes. Instead of drawing off those points again, I'd like to use my limited time to instead speak to how the economic realities test the figures in all of this. I'd like to stress that the FLSA itself applies the definition of employer in the person acting in the interest of an employer, whether directly or indirectly. If you speak to these points brought in under the FLSA, you'll need Section 213D. First, in that regard, Mr. Raimondo's attempting after a broken run of the business to apply the law under Section 215 would make such a passage of the indirectly part of the employer definition. You might as well be indirectly, not at this passage, if only the person's having a direct relationship with the employee or the people who have to deal with these violations. Acting indirectly in Section 16, in the 216B, for the right of action through the definition for the general employer, that's an instance to the cause of action. Are there any cases precedent that supports your position on 203D and how that works in 215 and 216? There are cases that don't specifically, for the reason that you spoke of, well, I'll recite two cases, two district court cases in our briefs. There are one assistant to another in the case. The answer is the Multinomial Barriers case. Both cases involve third-party retaliators, meaning district courts that know how to find and file because of their roles in acting in the interest of employers and the nominee. As far as the Fields case, is this a matter of first impression? It is, Your Honor. It would be a case of first impression. That's because both preceded the amendments to the statutes, and Dellinger, you say, is completely distinguishable. That's correct. I think Dellinger was distinguishable, and if Your Honor's like that, let me explain why I think he is. Because that's the case that the district courts seem to rely on considerably. That's correct, Your Honor. And here's the problem with him. Well, I won't talk about the problems with Dr., because he already does it in our briefs. I think Dellinger is distinguishable in this way. In our case, it's undisputed that Mr. Raimondo was working in the interest of an employer who he had been. But he was representing the employer in the litigation. Yes, that's correct, Your Honor. And there's no question, and it's undisputed in our case, is that the Angelos, who were Mr. Raimondo's clients, were Mr. Ari's employers. And Mr. Raimondo was acting in the interest of those employers. In Dellinger, by contrast, there had never been an actual employment relationship between Natalie Dellinger and Mr. Raimondo. The opera of a client. For a lot of them, they found out that the FLSA case had been filed in another case against another employer. Correct, Your Honor. And so Dellinger's case is distinguishable, because he never had a job. So the district court does not have to explicitly find a client such as Dellinger. It's doable. And the other thing from this case, because here in our case, there was an actual understanding of the employment relationship. So that's correct. It's the district court. There is a way to reconcile these cases, but it's not in the case of Dellinger. Again, I want to circle back to some of the terms of this action. Congress exempts from legal representatives in the definition of first and second degree, and the third degree in the definition of first and second degree. So by that, Congress clearly intended to reach beyond people who have announced this sort of operational role in the workplace, which is what Mr. Raimondo was arguing here were limited to. You usually don't find lawyers running their clients' workplaces. So we heard that from the assertion of legal representatives. Now, the lawyers will have to just apply all sorts of violations that Congress not included there. And then you can just say, there's not going to be a reasonable amount of money in an observable operational control of the enterprise. The third degree was the district court's source of information. It is assuming that when the court is deciding if you're getting into a customer's business, it seems to be essentially supporting that. Your Honor, I think it would put the district court, there's a huge problem with it, like beyond the basis of the statute, in a way to assume that certain cases which apply to economic reality tests in the context of substantive wage and hour violations, in other words, it's a spanker race. We think that the economic reality test is fine there, but we're not asking Congress to do that. We think that the district court's smartly been used, and the economic reality test is very useful. It's operationalized, the definition of employer in the wage and hour context. Assigning liability for wage and hour abuse, sometimes it's a complicated inquiry. You've got payroll companies, you've got parent corporations, you've got subsidiaries, you have agencies to look at, and the economic reality test is supposed to go to less than an hour, and, of course, to make all of the payroll strings to be digested is very useful in that context. I believe the district court heard in applying the bad test, in the face of the statute, in applying the bad test to the retaliation situation where clearly people other than those who are directly involved in the workplace can engage in retaliation. I think that's one of the issues in the Supreme Court's case in Northern, which was a Title VII case, and it said, well, obviously, you have to go beyond what happens in the workplace in order to define the scope of retaliation that's prohibited. People may retaliate in ways of them through adverse interactions, and so that teaching is very much applicable here. If we were to limit the base job section to the three Ds, people with economic control, you would have a situation where you would, in effect, have a huge loophole that employers can exploit to cause retaliation while being able to blame the person's team in that action, and so I believe that Supreme Court's reading was wrong in that respect. I just would like to talk a little bit about the consequences of this rule. As I mentioned, if the order isn't held, it would bring in how to do it and how to do a road map for employers who are disposed to retaliate. All they need to do would be to find something non-directly connected with the workplace to carry it out, and I might emphasize that this is not a legal concern. Excuse me. Did Barry tell Raimondo to do this, or was this a definition of his own imagination? Your Honor, the discovery is not complete. We haven't taken any depositions. There is no record. Right, so the 1286. Correct. There is no record. Some six messages between Raimondo and his client, which we believe concern his employee driver's license number. We don't know if Mr. Raimondo was acting on the information basis of Angelos, and maybe that he took it upon himself. We don't know. Why did you drop Angelos from the retaliation piece? Well, Your Honor, we settled with Angelos separately. Was that what it was? And we still think that, nonetheless, we think that getting a remedy against third-party retaliators is important, even if we can have some remedy against their own employers, and that's because people who are serial retaliators, such as Mr. Raimondo in this case, they need to be stopped. There needs to be some, there needs to be a liability for persons. Who could act in such a way? Well, you need to prove that Angelos acquiesced or directed Raimondo or be open beyond just the fact of the representation. I don't place on your behalf the status of any person acting indirectly or correctly in the interest of the employer. It doesn't say anything else. When you look at the interest, this obviously came in his lawsuit, it's in the interest of the employer. Yes, yes, Your Honor. I just want to circle back a little more after the policy. Your concern is that this case are not unique at all to immigrant workers. They would be of concern to any potential plaintiff unless there's some sort of vulnerability that could be exploited by a third party. Some experimentation in the community could be harmed. There could be personal safety issues. They could be concerned about the well-being of their family members. And so it makes no sense that Congress would have left a wide-open loophole allowing a huge category of retaliatory acts to be accomplished. You could essentially use Section 215-A-3. And I'd like to reserve the balance of my time and I hope to be able to see you tonight. Thank you. Good morning, Your Honors. My name is Scott Dixler and I represent Anthony Raimondo. The legal issue at the heart of this case is a narrow one, and that's whether outside counsel for an employer is himself individually liable under the FLSA as an employer. And the answer to that question is no. So I don't know why it's the answer no if the lawyer is acting in the interest of the regular employer. I, Judge Goldberg, two answers to that question. One, based on this court's precedent and one based on the plain language of the FLSA itself. Under this court's precedent, and under the Supreme Court's precedent, the key question examining whether a particular defendant is the employer of the plaintiff and therefore subject to liability hinges on the economic reality of that defendant's relationship with the plaintiff. Right, but we're not asking whether Raimondo was the employer of Arias. The employment relationship is between Angelos and Arias. And Raimondo comes in under a different provision, which is someone acting directly or indirectly on behalf of the employer. I disagree with that, Your Honor. To the extent that Raimondo's conduct is actionable, in this case a private FLSA damages action, it would be actionable only under Section 216B. And that authorizes any employee here, Arias, to sue any employer for a violation of Section 15A3. And this is something, if I understood, the counsel's argument correctly, that he doesn't dispute that in order for Raimondo to be personally liable in a damages action here, Raimondo himself would have to be Arias' employer. And that's where his argument fails. Under this court's precedent, to determine whether a particular defendant... Well, Your Honor, your counsel, it seems to me, you're just asking us to completely ignore 203D. I mean, this is a very cute argument, but it absolutely ignores 203D that defines employer as any person. Any person. Not a person who's employed or anything like that, but acting directly or indirectly. I simply see your argument as telling us to forget 203D. It doesn't have any meaning at all here. No, not at all, Your Honor. 203D... But how do you get around 203D that says any person acting directly or indirectly in the interest of the employer? That's Raimondo. Textbook case. Well, Your Honor, Section 203... You're telling me you're telling us to ignore the plain language? Uh, not at all, Your Honor. Section 203D by itself is circular. It defines employer as any individual. It's not circular. It's not circular. It's a definition. Right here. Right here. It defines the term employer by reference to employer. So in order to understate... Because it defines employer as any individual acting directly or indirectly in the interest of an employer. That's not circular at all. Well, that's expanding the definition of employer to make sure that there's no loophole in here. And you can't go just get the mafia to threaten people. Well, I guess you're right, Your Honor. That's ill-streaked in this case, too. There's no concern about a loophole in this case because the underlying employer here, the dairy defendants... You've got this guy Raimondo. He's kind of like a serial killer here running around probably stating to himself, I can get rid of these cases by getting rid of the plaintiffs. Right. And he's doing it according to what I read in the record. He's got a free-standing relationship with IMS, ICE, or whoever it is, to check out these people and get rid of them before the lawsuit can even proceed. Right, but the question, Your Honor, is not whether Arias can recover at all for Raimondo's lunchtime fatigue. He already has. He's settled with his employer, the owners of the dairy. So that's not an issue yet whether the conduct is. But the robber, the guy with the gun, gets off scot-free, and that's what it's ill-streaked. He says, we're not going to let you get around these retaliation provisions because anybody who acts indirectly in your interest is covered. Your Honor, 203D has to be read, even under its own plain language, in the context of the other definitions of the FLSA and the key bond there is Section 203G, which defines employ as suffering or permit to work, and 203E, which defines an employee as any person who is employed by an employer. So, keeping together, what Section 203D covers, to be an employer, in other words, you have to employ someone, you have to suffer or permit that individual to work. And Arias, or excuse me, Raimondo, did not suffer or permit Arias to work ever. He was outside counsel for Arias' employer, and he came into the case long after Arias' work before the jury concluded. I'm not sure. What is the most important precedent that supports your view of this case? I think the strongest case for us here, Your Honor, is Lambert v. Ackerley, which is an en banc retaliation case from this point. In that case, it was employees who carried out the retaliation. It was, yes, Your Honor, it was executives at a company. So that makes it completely different from this case. I don't think so, Your Honor, and the reason why not is because the question in that case, just as the question is here, is whether those particular individuals were themselves employers. We don't dispute that individual defendants can be employers under the Anthropocene. They can't. But the question whether they are depends on the economic reality of their relationship to the plaintiff. If Arias is... Lambert didn't exclude people like Raimondo, except he said these employees fit into the definition. But it necessarily did, Your Honor, and the reason for that... Necessarily did? Necessarily did? It necessarily did, Your Honor. What's the language in Lambert that necessarily covers this case? Look, Your Honor, if Arias is... What's the language in Lambert that controls this case? The language in Lambert that controls this case is the jury instruction that the Lambert court approved as, quote, correct and in no way erroneous. And that was where the district court in Lambert and the discourt sitting above approved the jury instruction. Instructed the jury that the individual defendants in that case, if you recall, were high-ranking executives, could be personally liable only if they exercised operational control over the business, controlled rates of pay, had the ability to hire and fire, had the ability to save hours and the like. If it were as simple as Arias argues... What's 203D mentioned in Lambert? It wasn't, Your Honor, but that's illustrative. It wasn't? It was mentioned in the first paragraph where I said, here are the definitions, and then it went on to say, to imply what that language means, here's the plain language argument that Arias is advancing, is foreclosed by that person. If it were as simple as asking whether anything that a particular employee does somehow advances the cause of his employer in some way, direct or indirect, and that's enough, then the entire discussion in Lambert was surplus, because certainly the executives in that case did something, almost by definition, to advance the cause of their employers. But that wasn't enough. What this court instructed courts to consider is the economic reality of the particular defendant's relationship looking to take the share of control. The question isn't simply whether any action is taken in the interest of the employer. Adopting Arias' reasons here would sweep far beyond the facts of this case, and would sweep in all sorts of agents and employees that Congress never would have intended to cover. For example... Judge Gould, if I can ask you a question here, assuming we don't agree with your analysis, then we think Arias can be sued. Can be sued. ... to show damages. Wouldn't he have to show that his actual damages exceeded what he got from his regular employer? Yes, you would, Your Honor, because the FLC doesn't offer us double recoveries. Arias has already obtained a remedy here. As Congress envisioned, and so he thinks to show that his actual damages exceeded the amount of money that he got from the charity. I believe you would, Your Honor. And... So there's no double recovery if we let Arias sue. Why, again, is it that you think that definition doesn't reach him? I think the definition doesn't reach him for the reasons I explained, which is that the definition, decades of case law established that the definition of employer under the FLC is analyzed with high towards economic reality and the sort of indicia of control and supervisory authority that I spoke about. So, and under that definition, a counsel is raising a concern about opening up a loophole and an open season for retaliation and that just isn't the case. Because in all of the concerns, the concern about the mafiosos, for example, is an employer hired a hitman to attack the employee, the employer himself or itself in the case of the corporation would be liable for that. So there's no, this isn't an issue about escaping liability or opening up an open season on retaliation, not in the least. Can I ask you a question? Go ahead. This is actually in the emails. What's OIG? Office of Immigration. It's the Office of Inspector General of the Legal Services Corporation. So this idea was I'm trying to follow these emails and not only to get him deported but to also stop the lawyers from representing him. Your Honor, if this is a factual issue, I think it's just the past tense. Yes, the emails. Your Honor, one of the issues according to my client, and this again would have to be developed in discovery if the case proceeds, was that his purpose in contacting ICE was because, under his understanding of law, an entity such as booking counsel who receives funding from the Legal Services Corporation is not permitted to represent undocumented workers. He was also asking if he could send people to the deposition so that he could apprehend them. Right, that's an email too. Is that ethical? I mean, under the professional roles of the contact person in California, is that even ethical? Your Honor, at the time of the conduct, could you answer the question yes or no? Is that ethical or isn't it? If the conduct occurred today, it clearly wouldn't be, because there's been an amendment by the legislature to the Business Administration's Code that explicitly forbids that conduct, is it still there as a retaliatory purpose? Now, we would argue in trial that it was not done for a retaliatory purpose, in which case it would not raise an ethical problem. For what purpose was it done? What purpose was it done? Well, Your Honor, that remains to be seen. I have to tell you, speaking for myself, this is a mind-boggling argument that this man was motivated by the ethics of the law involving the L.A. City. Well, has he come across at all? Well, Your Honor, in any event, the key issue here, regardless of the citizenship, of course, that raises strong feelings on all sides, but this case ultimately presents that. I'm asking you about, I mean, it seems to me, when I read this letter, that for a lawyer who is, you know, practicing under the rules of conduct in California, that this would be unethical conduct. I mean, that's another issue that, I mean, I read this letter and, you know, it's all documented. Has he been sanctioned for this? He has, Your Honor. Your Honor, for all of the reasons we argued, only employers are liable for deletion under the FLSA. There's not a single case that the other side identified in which an attorney for an employer has himself been held liable as an employer under the FLSA. Furthermore, under their reading of the statute, any employee of a company or any third-party vendor of a company that's brought in to do work for the employer would himself or itself be liable  For example, what's the matter with that if they're trying to retaliate against somebody for raising a right under federal law? Well, the problem, Your Honor, is that there's no way to cap it, and it only to retaliation cases. Under Section 216B, employees have a right of action to sue any employer for minimum wage violations, overtime violations, and retaliation violations. So just as an example, if a firm hired an outside photographer to take pictures of its employees to put on the firm's website, that photographer is certainly acting in the interest of the employer in that he's creating these promotional photographs, and he's doing so in relation to the employees that he's photographing. So under Arias's plain language argument, Section 203D would be satisfied. However, no one would think that that outside photographer would be liable for mundane wages, overtime, and the like. It just doesn't follow. And that's why, in Lambert and other cases, Boucher, for example, this court, in analyzing whether particular defendants were liable, didn't stop its analysis asking whether the particular defendants acted in the employer's interest in some respect. They asked whether those individual defendants exercised the requisite control over the plaintiff's work, and only after finding that they did, did this court affirm liability. And applying that framework, this court should affirm the judgment below. Right, thank you. Are there any other questions? If there are others, I'll be brief. Counsel, for Mr. Armando, is I think it's okay to persuade the court that with the creative variables, if employers fund that way, what the court should do in defending the employer is the person acting in the interest of the employer has to be doing it in relation to an employee. So, it's not like the full world of any employee who works for the employer could be unliable if it's the person who does the action in relation to the employee in here. It was Mr. Armando acting with respect, which seems to me, Mr. Hardy, to suspect that. What about the last hypothetical raised by Counsel? You hire a photographer. The photographer takes pictures and posts them. That photographer becomes an employee and, therefore, liable for all things that an employer, rather, therefore, that person becomes liable for all the things that an employer is liable for. Oh, no, Counsel. He was looking for that person is not vicariously liable because he was employed to take pictures. That person has to be acting, if anything, with respect to an employee, not forever ever, but in that individual's action as an issue. Here, it's the retaliatory action taken by Mr. Armando. Yes. Would the photographer become an employer under this definition? I don't think so, Your Honor. He was acting directly or indirectly for the employer. But he took pictures. How do you respect employees' social rights? Some photographer says to me, why does it say that? Well, it's the last word. The definition, Your Honor. An employer is any person acting directly or indirectly in the interest of an employer. I read that meaning the interest of an employer with respect to social rights. I think that's fairly sensible sensible reading of that statute. They're not referred, according to the case of Sir Ramon Pedraza. What's solicitor rights over time pay? All kinds of stuff, not just retaliation. Correct. But as a photographer, it's hypothetical. Some salary, I think it's a little over three-year wages or hours that the photographer would be hired. But only in the respect to the solicitor's rights of the other side. Only if the photographer for some reason had control over wages and hours and works those people for under a year or greater hours for a few years. Right. He has no control over wages and hours over time or anything. No. But he has the ability to retaliate against the barriers because of solicitor rights. He doesn't have to be a phenomenal employer. He can be just a phenomenal employer So he's an employee he's an employer only for retaliation purposes then? In this case, correct. Yes. We're not saying that he should be liable for any unemployment wage and hour violations that the statute has committed. Well, that's convenient, but where does it support in the statute? I'm sorry. I don't understand. The broad way that you're reading it would encompass an awful lot of other stuff. Apart from retaliation. I probably haven't made myself I haven't expressed myself very well. The definition of employer is very targeted and limited. It is any person acting directly or indirectly in the interest of the employer with respect to an employee. Because an employee becomes liable for everything that an employer is liable for. Not for all purposes. Not only when that person would ask that it's fine, that's yet fated, but where do we find that limitation anywhere in this language? Well, it's not a language, but there's a 11th Circuit case called Lamont-Edvers' C-13 Shudders and Thief, which talks about how to interpret it in relation to an employee language and the 11th Circuit they talked about it being restricted to acting with respect to that employee's rights, not implicitly. So, I've looked at Lamont-Edvers' case Lamont-Edvers' C-13 Shudders, 11th Circuit, 2013 So that gives you five tours to put it in relation to what employee means. I think it's clear from that 11th that when you're acting toward a person in relation to his or her personal rights not implicitly. Is that in your brief? I don't think so, Your Honor. Maybe, but I don't because I should not think that that case gives contours and limitations to put in relation to what employee means. What's the citation of that case? Well, you better file a 28-J letter pretty fast if you're relying on that. Okay, we'll do so. All right. Thank you, Counsel. Your Honor, Bryce vs. Ramondo is the decision of the courts adjourned for today. Thank you.
judges: Trott, Wardlaw, Gould